PEOPLE v KIERONSKI

Docket No. 180745. Submitted September 6, 1995, at Detroit. Decided
    November 3, 1995, at 9:15 A.M.

   Michael S. Kieronski was bound over to the Recorder's Court of
   Detroit on a charge of aggravated stalking. The Recorder's
   Court, Leonard Townsend, J., quashed the information and
   dismissed the charge, finding that the evidence at the prelimi-
   nary examination that the defendant telephoned the home of
   the victim, his former wife, on a single occasion and had
   approached and talked to the victim on one occasion at the
   courthouse and on one occasion at the office of the friend of the
   court did not constitute the crime of aggravated stalking even
   assuming that the statements made by the defendant on each
   occasion were threatening in nature and there existed a valid
   injunctive order of which the defendant had actual knowledge
   prohibiting him from talking to, calling, or harassing the
   victim. The prosecution appealed.

      The Court of Appeals held:

    · 1. Aggravated stalking, MCL 750.411i(2)(a); MSA 28.643(9)(2)
   (a), occurs where an individual, having actual notice of a
   restraining order, injunction, or preliminary injunction, en-
   gages in a wilful pattern of conduct composed of a series of two
   or more separate noncontinuous acts involving repeated or
   continuing unconsented contact with another that would cause
   a reasonable person to suffer emotional distress and to feel
   terrorized, frightened, intimidated, threatened, harassed, or
   molested and that actually causes the victim to feel terrorized,
   frightened, intimidated, threatened, harassed, or molested.

      2. The evidence presented at the preliminary examination
   was sufficient to show that the defendant, in violation of a
   restraining order of which he had actual notice, engaged in
   such a wilful course of conduct and actually caused the victim
   to feel terrorized, frightened, intimidated, threatened, harassed,
   or molested. Accordingly, the district court properly bound over
   the defendant on the charge of aggravated stalking, and the

REFERENCES

Am Jur 2d, Assault and Battery §§ 3, 4, 28.
Validity, construction, and application of stalking statutes. 29
    ALR5th 487.

Recorder's Court erred in quashing the information and dismissing the charge.

Order of the Recorder's Court vacated, and the charge of aggravated stalking reinstated.

CRIMINAL LAW — AGGRAVATED STALKING — ELEMENTS OF CRIME.

Aggravated stalking occurs where an individual, having actual notice of a restraining order, injunction, or preliminary injunction, engages in a wilful pattern of conduct composed of a series of two or more separate noncontinuous acts involving repeated or continuing unconsented contact with another that would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested (MCL 750.411i[2][a]; MSA 28.643[9][2][a]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

*Denise D. Green,* for the defendant on appeal.

Before: SMOLENSKI, P.J., and CORRIGAN and R. M. RANSOM,* JJ.

SMOLENSKI, P.J. The prosecutor appeals as of right orders of the Recorder's Court of Detroit quashing an information charging defendant with aggravated stalking, MCL 750.411i; MSA 28.643(9) (stalking in violation of a restraining order of which the individual received actual notice), of his ex-wife,[1] Mary Louise Curry, and dismissing the case. We vacate the orders and reinstate the charge.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] It is not entirely clear from the record whether Curry and defendant were already divorced or merely separated when the alleged stalking incidents occurred.

At the September 14, 1994, preliminary examination in the district court, the sole witness to testify was Curry. Curry testified that at one time defendant had been her husband and that she and defendant had been married for seven weeks. Curry testified that at some point an ex parte order had been issued by the Wayne Circuit Court providing that defendant was to have no contact with her, including talking to, calling, or harassing her, and that in the time since this order had been issued, defendant had intimidated or put her in fear on more than one occasion.

Curry testified that at 10:30 A.M. on June 7, 1994, she and defendant had been at the office of the friend of the court on Griswold in Detroit and that defendant had walked by her and stated "I'll get you, bitch." Curry testified that she had been at the office of the friend of the court because she had been subpoenaed and that her presence there had nothing to do with her divorce or an investigation by the friend of the court. Curry testified that defendant was at the office of the friend of the court concerning a custody battle between defendant and "his ex-wife." The record is not clear concerning whether Curry was referring to herself or whether defendant had a second "ex-wife."

Curry also testified that on a day in June at 6:40 A.M. defendant telephoned her at her parents' house and asked to speak to Angel, her first ex-husband (defendant was Curry's second ex-husband). Curry testified that she told defendant: "Angel isn't here. You know, my ex-husband don't live here, and you know you're not supposed to be calling me here, and he says, 'I just want to tell you I'll get you.' "

Curry testified that a few weeks before the preliminary examination she had been standing in "this very courtroom" when defendant came

through the courtroom door and at her and that a police officer "had to tell him to leave the court."

Curry testified that the three incidents about which she testified had all taken place after the ex parte order of injunction had been issued.

The district court stated that it was "going to take [Curry's] testimony as probable cause here to bind this Defendant over" on the charge of aggravated stalking.

Defendant subsequently moved to quash the information and to dismiss the case on the ground that insufficient evidence had been presented at the preliminary examination that defendant had committed the crime of aggravated stalking.[2] The motion contended that no evidence had been presented that defendant had followed Curry in any public or private places or had visited her at her place of employment or residence and that two of the alleged instances of stalking had occurred at locations where defendant had a right to be present. The motion further contended that no evidence had been presented that an injunction was in effect at the time of the alleged incidents or that defendant had been served with the injunction. The motion suggested that the appropriate remedy was to pursue a contempt charge for defendant's violation of the injunction.

At the hearing on defendant's motions in the Recorder's Court, defense counsel again argued that there was no evidence that defendant had

[2] Also argued in the motion was that the aggravated stalking statute was void for vagueness. In granting the motion, the Recorder's Court did not address this issue. Defendant, as appellee, again argues in his brief on appeal that the aggravated stalking statute is void for vagueness. However, inasmuch as defendant did not cross appeal, this Court need not address this issue because it is unpreserved. *People v Gallego,* 199 Mich App 566, 575-576; 502 NW2d 358 (1993); see also MCR 7.207, 7.212(D)-(G). In any event, this Court recently held that the aggravated stalking statute is not void for vagueness. *People v White,* 212 Mich App 298; 536 NW2d 876 (1995).

followed or pursued Curry or engaged in conduct indicating a continuity of purpose, as defined in the aggravated stalking statute. Defense counsel contended that the evidence presented at the preliminary examination indicated only "words of anger."

In granting defendant's motion, the Recorder's Court stated:

> I think [the Wayne Circuit Court] certainly has jurisdiction if [it] feels an injunction has been violated. But we're dealing now with the criminal statute. And what happened here was he called the mother's house and said something on the phone. My interpretation of "stalking," and criminal statutes must be interpreted strictly. "Stalking" means following people around, harassing them, sitting outside their house. There hasn't even been the remotest violation of a criminal statute here. There has been—this is a criminal court. This is not a divorce court. I wouldn't waste the Court's time with this.
>
> I can understand people being upset; I can understand he might have said, "I'm going to get you," and all that. But he did not do anything except talk.
>
> We take up the time of this court with a jury where clearly the statute means stalking. A telephone call was made, there was an injunction. Take it back to [the Wayne Circuit Court].

When the prosecutor protested that face-to-face contact between defendant and Curry had also occurred when defendant had walked by Curry and stated "I'll get you, bitch," the Recorder's Court stated, "That's not stalking." The Recorder's Court stated further:

> I think we have spent more time already on this case than it deserves. Case will be dismissed. Take

the case over to [the Wayne Circuit Court] for
violation of the injunction. This is not a violation
of the statute. We're wasting time. This is a crimi-
nal court. [The Wayne Circuit Court] has jurisdic-
tion. The statute has not been violated. It must be
strictly construed. And that means they must
show that there has been stalking. That did not
happen here.

On appeal, the prosecutor contends that the
district court did not abuse its discretion in bind-
ing over defendant because sufficient evidence was
presented that defendant's conduct fell within the
plain meaning of the aggravated stalking statute.
The prosecutor argues that the Recorder's Court
erred because it narrowly interpreted the aggra-
vated stalking statute to cover only situations
where a defendant follows a victim, harasses her,
or sits outside her house, and because it believed
that its time was being wasted because an injunc-
tion was already in place.

Defendant contends that the language of the
aggravated stalking statute is obscure and of
doubtful meaning. Defendant further contends
that the Legislature did not intend to criminalize
ambiguous behavior, such as accidentally appear-
ing within the sight of the victim or words spoken
in anger. Defendant contends that stalking is an
objective course of conduct that escalates to a
point of possible physical injury or death and
involves uninvited physical presence with no legiti-
mate purpose except to intimidate or harass. De-
fendant argues that no evidence was presented
that he engaged in such conduct, i.e., no evidence
was presented that he repeatedly followed, tele-
phoned, or communicated with Curry or was pres-
ent at a place where he had no legitimate busi-
ness. Defendant argues that the sole evidence
presented were mere words spoken in anger and

that the Legislature did not intend to define words spoken in anger as stalking. Defendant further contends that the Legislature did not intend to criminalize all words that may be viewed as threatening, but rather intended to proscribe only threats that can be given credence and can lead a person to believe that the threat likely will be given effect and will result in death or physical injury. Defendant argues that no evidence was presented from which to infer that his words "I'll get you" were intended as a threat to kill or inflict physical harm.

Where an issue raised on appeal concerns the factual sufficiency of the evidence to bind over a defendant, this Court applies the same standard of review as is applied by the circuit court in reviewing the district court's decision. *People v Thomas,* 438 Mich 448, 452; 475 NW2d 288 (1991); *People v Neal,* 201 Mich App 650, 654; 506 NW2d 618 (1993). Thus, in assessing the Recorder's Court's decision to dismiss the charge against defendant in this case, this Court determines whether the district court abused its discretion in concluding that there was probable cause to believe that defendant had committed the crime of aggravated stalking. *Thomas, supra; Neal, supra.* However, this Court reviews for error a lower court's decision to grant a motion to quash on legal grounds. *Thomas, supra; People v Grant,* 211 Mich App 200, 202; 535 NW2d 581 (1995).

A defendant must be bound over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant committed the crime. MCL 766.13; MSA 28.931; *People v Premen,* 210 Mich App 211, 218; 532 NW2d 872 (1995). The prosecution is not required to prove each element of the crime beyond a reasonable

doubt. *People v Whipple,* 202 Mich App 428, 432; 509 NW2d 837 (1993). Rather, where there is presented credible evidence both to support and to negate the existence of an element of the crime, a factual question exists that should be left to the jury. *Neal, supra* at 655. In making its determination, the district court must examine the entire matter. *People v King,* 412 Mich 145, 154; 312 NW2d 629 (1981).

In determining whether the district court abused its discretion in finding probable cause to believe that defendant committed the charged offense of aggravated stalking in this case, we must determine the intent of the Legislature. *People v McBride,* 204 Mich App 678, 681; 516 NW2d 148 (1994). The language of the statute is the best source for determining legislative intent. *Id.* at 681-682. All provisions of the Penal Code are construed according to the fair import of their terms. MCL 750.2; MSA 28.192; *McBride, supra* at 682. We find the language of the aggravated stalking statute unambiguous. It provides:

> An individual who engages in *stalking* is guilty of aggravated stalking if the violation involves any of the following circumstances:
> (a) The actions constituting the offense are in violation of a restraining order and the individual has received actual notice of that restraining order, or the actions are in violation of an injunction or preliminary injunction. [MCL 750.411i(2); MSA 28.643(9)(2). Emphasis supplied.]

The statute defines "stalking" as follows:

> "Stalking" means a willful *course of conduct* involving repeated or continuing *harassment* of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated,

threatened, harassed, or molested, and that actually causes the *victim* to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 750.411i(1)(e); MSA 28.643(9)(1)(e). Emphasis supplied.]

The statute defines "course of conduct" as follows:

"Course of conduct" means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts, evidencing a continuity of purpose. [MCL 750.411i(1)(a); MSA 28.643(9)(1)(a).]

The statute defines "harassment" as follows:

"Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing *unconsented contact* that would cause a reasonable individual to suffer *emotional distress*, and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose. [MCL 750.411i(1)(d); MSA 28.643(9)(1)(d). Emphasis supplied.]

The statute defines "unconsented contact" as follows:

"Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent, or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(i) Following or appearing within the sight of that individual.

(ii) Approaching or confronting that individual in a public place or on private property.

(iii) Appearing at the workplace or residence of that individual.

(iv) Entering onto or remaining on property owned, leased, or occupied by that individual.

(v) Contacting that individual by telephone.

(vi) Sending mail or electronic communications to that individual.

(vii) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual. [MCL 750.411i(1)(f); MSA 28.643(9)(1)(f).]

The statute defines "emotional distress" as follows:

"Emotional distress" means significant mental suffering or distress that may, but does not necessarily require, medical or other professional treatment or counseling. [MCL 750.411i(1)(c); MSA 28.643(9)(1)(c).]

The statute defines "victim" as follows:

"Victim" means an individual who is the target of a willful course of conduct involving repeated or continuing harassment. [MCL 750.411i(1)(g); MSA 28.643(9)(1)(g).]

In this case, an inference that defendant's actions were in violation of an injunction or restraining order of which defendant had actual notice arises as a result of Curry's testimony at the preliminary examination that an outstanding ex parte order prohibiting defendant from contacting her had been issued and was in place when each of the three alleged incidents occurred. MCL 750.411i(2)(a); MSA 28.643(9)(2)(a).

Evidence was also presented at the preliminary examination that defendant "stalked" Curry. MCL 750.411i(1)(e); MSA 28.643(9)(1)(e). Specifically, evi-

dence was presented that defendant wilfully engaged in a series of two or more separate noncontinuous acts evidencing a continuity of purpose, in effect, to "get Curry," and thus engaged in a "willful course of conduct." MCL 750.411i(1)(a) and (e); MSA 28.643(9)(1)(a) and (e). Curry testified that defendant walked by her at the office of the friend of the court and told her he would "get her," that he contacted her by telephone and again told her he would "get her," and that he approached her in the courtroom of the district court in such a manner that caused a police officer to tell him to leave. Intent is a question of fact to be inferred from the circumstances by the trier of fact. *McBride, supra* at 682. Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to justify binding over the defendant. *Premen, supra* at 218.

Evidence also was presented that defendant engaged in "repeated or continuing harassment" of Curry. MCL 750.411i(1)(d) and (e); MSA 28.643(9)(1)(d) and (e). Curry testified that defendant walked by her at the office of the friend of the court and stated, "I'll get you, bitch," and that defendant came through the courtroom door of the district court and at her in such a manner that a police officer had to tell defendant to leave the court. Such testimony raises an inference that defendant initiated "repeated or continuing unconsented contact" with Curry by approaching or confronting her in a public place. MCL 750.411i(1)(d) and (f)(i) and (ii); MSA 28.643(9)(1)(d) and (f)(i) and (ii). Even assuming defendant had legitimate business at these public places, defendant does not assert that his actions at those public places constituted constitutionally protected conduct, and we discern no legitimate purpose in approaching or confronting

Curry in these places. MCL 750.411i(1)(d); MSA 28.643(9)(1)(d).

Curry also testified that defendant called her parents' home and asked to speak with "Angel" and that she told him, "You know, my ex-husband don't live here, and you know you're not supposed to be calling me here," and that defendant then stated "I just want to tell you I'll get you." Despite defendant's contention that he called Curry's parents' home to speak to a third person, Curry's testimony raises the inference that defendant's telephone contact was "initiated or continued without [Curry's] consent, or in disregard of [Curry's] expressed desire that the contact be avoided or discontinued." MCL 750.411i(1)(f)(v); MSA 28.643(9)(1)(f)(v).

The evidence also raises an inference that defendant's unconsented contact and apparent threats would cause a reasonable person to suffer significant mental distress. MCL 750.411i(1)(d); MSA 28.643(9)(1)(d). Moreover, evidence was presented that defendant's unconsented contact actually caused Curry to suffer significant mental distress, because she testified that defendant had intimidated or put her in fear on more than one occasion and that she was in fear at the time of the preliminary examination. MCL 750.411i(1)(d); MSA 28.643(9)(1)(d).

Thus, evidence of each element of the crime of aggravated stalking was presented at the preliminary examination, i.e., that defendant, in violation of a restraining order of which he had actual notice, engaged in "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually cause[d] the victim to feel terrorized, fright-

ened, intimidated, threatened, harassed, or molested. MCL 750.411i(1)(e) and (2)(a); MSA 28.643(9)(1)(e) and (2)(a). The district court properly examined the entire matter. *King, supra.* Curry's testimony was sufficient to permit the district court to conclude that the crime of aggravated stalking had been committed and that there was probable cause to believe that defendant had committed the crime. *Premen, supra; McBride, supra.* We conclude that the district court did not abuse its discretion in binding over defendant for trial on the charge of aggravated stalking. *McBride, supra.* Rather, the Recorder's Court committed an error of law in failing to construe the plain language of the aggravated stalking statute according to the fair import of its terms. *Thomas, supra* at 452; *McBride, supra* at 683.

We vacate the Recorder's Court orders quashing the information and dismissing the charge of aggravated stalking and reinstate the charge. We do not retain jurisdiction.